GEORGE W. BEASLEY *et al.*

*v.*

WILLIAM O. BEASLEY.

*Opinion filed June 17, 1899.*

1. RATIFICATION—*after restoration of grantor to sanity—how shown.* Ratification of a deed after restoration of sanity must be the intelligent act of the grantor, who, with full knowledge of the conveyance, clearly evinces an intention to abide and be bound by it.

2. SAME.—*what does not show ratification after restoration of sanity.* That the grantees in deeds made during the insanity of the grantor, their father, remained in possession and improved the property during the grantor's lucid intervals without objection by him, does not show ratification, where the deeds were originally voluntary and no consideration was paid during such lucid intervals, and there is no evidence that the grantor knew he had made the deeds or that the grantees were claiming as owners.

APPEAL from the Circuit Court of Coles county; the Hon. FRANK K. DUNN, Judge, presiding.

JAMES A. EADS, and JOE H. WINKLER, for appellants:

A person may be insane and have been in an asylum and yet be capable of attending to his business and be bound by his contracts. *Searle* v. *Galbraith,* 73 Ill. 272.

Even though a person be insane, his acts done in a lucid interval are valid. *McCormick* v. *Little,* 85 Ill. 65; *Lilly* v. *Wagoner,* 27 Ill. 399.

If the insanity is temporary or recurrent, the presumption arising from the finding of a person insane does not prevail. *Trish* v. *Newell,* 62 Ill. 201, and authorities cited.

An insane person may ratify an act, contract or deed made when he is insane, after he becomes sane. *Searle* v. *Galbraith,* 73 Ill. 272; *Arnold* v. *Iron Works,* 1 Gray, 434; *Allen* v. *Billings,* 6 Metc. 415; *Howe* v. *Howe,* 99 Mass. 98.

The deed of an insane person is not void, but voidable. The maker of it may avoid it when he comes into the possession of his full powers of mind, or if he recovers his reason he may affirm and ratify it. Any distinct

and decisive act of recognition as a valid and subsistent contract is competent evidence of ratification.  *Howe* v. *Howe*, 99 Mass. 98.

The deed of an insane person being not void but voidable only, it follows that the person who claims title under a deed is not obliged to give any proof of the sanity of the person making the deed.  The burden of proof is upon the person claiming the deed is invalid.  *Howe* v. *Howe*, 99 Mass. 98.

The discharge of a person from an insane asylum is evidence that he is restored to reason.  *Langdon* v. *People*, 133 Ill. 406; *State* v. *Davis*, 27 S. C. 609; Rev. Stat. chap. 85, sec. 20.

FRANK VANSELLAR, and NEAL & WILEY, for appellee:

The deed of an insane man is voidable, and may be set aside by a court of equity upon bill filed either by the grantor after he is restored to reason or by his heirs. 11 Am. & Eng. Ency. of Law, 149; *Helberg* v. *Schumann*, 150 Ill. 12; *Crawford* v. *Thompson*, 161 id. 161.

The legal presumption is that all persons of mature age are of sane memory, but after inquest found the presumption is reversed until it is rebutted by evidence that he has become sane.  1 Greenleaf on Evidence, par. 556; 2 id. par. 371; *Lilly* v. *Wagoner*, 27 Ill. 305; *Menkins* v. *Lightner*, 18 id. 282; *Trish* v. *Newell*, 62 id. 196; *Railway Co.* v. *Mills*, 91 id. 39; 5 L. R. 632.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree setting aside certain deeds, and for partition of land.  John Beasley died intestate in September, 1897, leaving Sarah Ann Beasley his widow, and leaving also two daughters, a son and a grand-son, as his only heirs.  The grand-son, William O. Beasley, filed the bill and obtained the decree appealed from.  He was the only child of Henry Beasley, who was the son of John Beasley and his first wife.  The appel-

lants, George W. Beasley, Jeanette Beasley Curtis and Evaline Beasley Mitchell, were the only issue of his second marriage. Sarah Ann Beasley died soon after the death of her husband.

John Beasley was, by proper proceedings under the statute, adjudged insane February 23, 1878, and committed to the asylum for the insane. On December 31, 1881, by a deed executed by himself and wife, he conveyed a part of the lands in controversy to his son, George W. Beasley. Whether he ever fully recovered his mental faculties does not appear, nor does it appear when he was discharged from the asylum, but there was some evidence tending to prove that when the deed was made he had recovered sufficiently to transact ordinary business. By similar proceedings in the same court he was again adjudged insane April 10, 1885, and again at the March term, 1886, and again at the December term, 1887. Each time he was committed to the asylum. By a deed executed by himself and wife, dated February 22, 1886, a very short time before he was adjudged insane the third time, he conveyed another portion of the lands in question to Evaline Beasley Mitchell. By another deed, dated December 28, 1887, he conveyed another part of the lands in controversy to his said daughter Jeanette. As before stated, he was adjudged insane the fourth time at the December term, 1887, of said court. By another deed, dated December 22, 1887, he conveyed sixty acres, containing the homestead, to his wife, Sarah Ann Beasley, which was confirmed by a subsequent deed made shortly before his death, in 1897. The court set aside the first three deeds mentioned but refused to set aside the conveyance to his wife, but held it ineffectual to convey the homestead, and, the widow having died, decreed that the homestead to the extent of $1000 in value be divided among the heirs, with other lands, as intestate estate. Appellee has assigned cross-errors, and insists that the deed to the wife should have been set aside also.

The evidence was not specific or clear as to the length of time John Beasley remained in the asylum each time he was committed, nor what his mental state was when he returned to his home, though one witness stated that when he was taken to the asylum he would remain a year or less—remained the last time three or four weeks. It is not claimed by the appellants that he was not insane at the times he was so adjudged, and the evidence clearly shows that at such times he was not competent to transact business of such character as the disposition of his estate by deed or will, but the contention is that his insanity was temporary and recurrent, and that he was competent to make the deeds when they were made, and, even if not then competent, that he ratified them after he was restored to sanity. We are of the opinion that the evidence fails to show that for the last few years of his life, and especially when he made the deed confirming the title to the sixty acres in his wife, he did not have sufficient mental capacity to make that deed, and we are inclined to hold that the chancellor was right in refusing to disturb the title to that part of the land except as to homestead. Inasmuch as the release of the husband alone was ineffectual to release the homestead, when the wife died the title to the property, to the extent of $1000 in value covered by the homestead, passed to the heirs. The cross-error assigned cannot therefore be sustained.

It will be noticed that at least two of the deeds set aside were made almost contemporaneously with adjudications of the grantor's insanity, and there seems to have been a period of about ten years, beginning in 1878, during which he was adjudged insane at four different times and committed to the asylum. In view of all the evidence we cannot say that the decision of the chancellor that he was not mentally competent to make these deeds was against the weight or preponderance of the evidence. While several witnesses testified that they saw him at intervals during this period, and that they thought his

mind was clear and that he was competent to transact ordinary business, it was not shown that he did transact intelligently any business of any importance, but, on the contrary, it was shown that he had a mania for making contracts for live stock and property which he would not consummate but would forget or ignore, and that his neighbors, observing his mental condition, would refuse to sell to him. The evidence may be sufficient to show that he had lucid intervals, of longer or shorter duration, during the period mentioned, but it does not sufficiently appear that these deeds were made during these lucid intervals.

It is, however, strenuously contended that, at most, the deeds were only voidable, and that John Beasley by. his acts ratified and confirmed the deeds after he had recovered from his insanity. But we are unable to find in the record any sufficient evidence of such ratification. It is not claimed that there was any consideration for the conveyances or that he received or accepted anything for them after his sanity is supposed to have been restored, and the only evidence tending to prove that he ratified or confirmed them was testimony showing that the respective grantees were in possession of the lands, and had made or were making improvements thereon with his knowledge, and that he did not object. Some of the grantees were in possession and paying him rent for the property before they received their deeds, and it is not altogether clear that he even knew that he had conveyed the property to them and that they were claiming to be the owners under the deeds in question, or that he did anything to ratify the voidable deeds he had made. For the last ten years of his life he transacted no business of importance. True, he was during all of that time afflicted with cancer, which destroyed his right eye and eventually caused his death, but his mental capacity to transact business during a large part of this period was the subject of conflicting evidence. While a re-delivery

of the deed after restoration of sanity is not indispensable to a ratification, yet such ratification must appear to have been the intelligent act of the grantor, who, with full knowledge of the conveyance, clearly evinces an intention to abide by and be bound by it. Thus, it was held in *Arnold* v. *Richman Iron Works*, 1 Gray, 434, that where the grantor, after his restoration to sanity, knowing that the grantee was in possession under his deed made while he was insane, took no steps and gave no notice of any intention to disaffirm or recover possession, but received payment of notes given as the price of the conveyance, his intention to ratify and confirm the deed might be inferred,—and this, too, whether he knew or did not know that he had the legal right to disaffirm the conveyance. (See, also, *Searle* v. *Galbraith*, 73 Ill. 269.) But in the case at bar, as before said, the evidence is not sufficient to prove ratification.

The question of the competency of the parties to the suit to testify in the case has been discussed by counsel on both sides, but the record does not show that that question was raised in the court below, and it cannot be raised here for the first time.

Finding no error the decree will be affirmed.

*Decree affirmed.*