GLENDORA C. NUTTER v. DES MOINES LIFE INSURANCE COMPANY, Appellant.

Insurance: CONTRACT BY INCOMPETENT: VALIDITY. Where an insurance contract gave to the assured several optional settlements, an exercise of either involving a knowledge of his rights and the effect upon him and those dependent upon him, a settlement thereunder was in itself a new contract and not merely the per-

formance of one already made, and was invalid if the assured at the time of making settlement was mentally incapable of exercising a deliberate judgment.

**Same:** AVOIDANCE OF CONTRACT: *status quo*. Where the parties can be placed in *statu quo*, the contract of an insane person will be set aside, even though the other party did not know of the disability, and the entire transaction was fair and free from fraud. Thus where the policy was recognized as in full force, and cash settlement was made with the insured when mentally incompetent, the parties could be placed in *statu quo*, in a suit by the beneficiary, by deducting from the amount of the policy the sum paid in settlement and existing loans.

**Same:** EVIDENCE: REPRESENTATIONS OF INSURED. The purpose of the statute requiring that all representations and warranties by the insured shall be attached to the policy is that all parts of the contract may be together and the insured may be in possession of the evidence of his contract; and a failure to do so precludes the insurer from pleading or proving any representations not so attached to the policy: So that where the insured made no representations in his original application concerning the use of liquor, the representation in an application for reinstatement that he was in good health and did not use alcoholic liquor to any greater extent than originally warranted was not admissible.

**Same:** SURRENDER OF POLICY: SUIT BY BENEFICIARY. The setting aside of a contract of settlement and surrender of a policy of insurance, made by the insured when mentally incompetent, is not a prerequisite to an action on the policy by the beneficiary.

**Insane persons:** DISAFFIRMANCE OF CONTRACTS. The personal representative of an insane person may disaffirm and avoid his contracts.

**Same:** VERDICT: PASSION AND PREJUDICE. Where the evidence concerning the mental capacity of a person is such as to support a finding of insufficient capacity to comprehend and appreciate the business in hand, a verdict to that effect will not be set aside on the ground of passion and prejudice.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, JUDGE.

TUESDAY, JUNE 25, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*Clinton L. Nourse* and *Casper Schenk,* for appellant.

*Bowen & Alberson,* for appellee.

SHERWIN, J.—On the 21st day of September, 1900, the defendant issued an insurance policy on the life of Harry C. Nutter for $1,000 payable in case of his death to the plaintiff as his beneficiary. This policy, No. 28,201, was issued in lieu of a policy, No. 12,244, which had been issued to said Nutter by this defendant in 1894, and which policy was canceled at the time of the issuance of policy No. 28,201 in September, 1900. In September, 1904, Nutter failed to pay the annual premium then due on his policy and was lapsed thirty days thereafter in accordance with the terms of the policy. In November, 1904, he applied in writing for reinstatement, in which application he warranted that he was in good health and that he did not use alcoholic or malt liquors to any greater extent than warranted in his original application for insurance. He was reinstated, and at the same time borrowed money of the defendant to pay the premium then due, and signed a loan agreement for the payment of this money. This amount became due September 21, 1905, and, under the written agreement between Nutter and the defendant, the defendant had the right to cancel the policy in the event of the failure of Nutter to pay the amount of the loan. This loan was not paid when it became due, and later Nutter borrowed an additional sum of the defendant, for which he executed his promissory note, which finally became due September 1, 1906. In August, 1906, Nutter applied to the defendant for the surrender of his policy, under the terms thereof, for its cash value, and about the 1st of September he did surrender said policy and receive from the defendant its cash value. Nutter died about the 17th day of September, 1906, and the plaintiff, his widow, thereafter brought this action at law to recover on the policy

so surrendered and canceled. There was a judgment for the plaintiff on the verdict of a jury, and the defendant appeals.

The surrender of the policy, under the circumstances narrated, was pleaded by the defendant and admitted by the plaintiff. But the plaintiff in reply thereto alleged that Harry C. Nutter was mentally incapable of making a valid surrender, and because thereof, that such attempted surrender was of no effect. The appellant contends that neither the negotiations for, nor the final surrender of, the policy, involved the making of a new contract; that all that it did amount to was the performance of a contract made by the assured and the company when the policy was issued in September, 1900, a time when the soundness of mind of Nutter was not questioned. And based upon this proposition, the defendant contends further that, where one party to a contract becomes insane during its performance, his insanity neither suspends nor annuls such contract.

We are of the opinion that the surrender of the policy involved more than the simple performance of a contract already entered into. The assured had an option, which only a sane mind could intelligently exercise. He was not bound to surrender his policy and receive its then value in lieu of the benefit that its continuance in operation might eventually bring to himself, or to his estate, or beneficiary. Under the terms of the policy, he had at that time the right to do either one of four things: First, to continue the policy for the full amount by paying the annual premiums provided for therein; second to borrow from the defendant company, at 6 percent interest, the loan value of the policy for that year; third, to surrender the policy and take a paid-up non-participating policy for the amount specified in the table of values attached to the policy; fourth, to surrender the policy and take the cash value according to the said table of values. The choice of rights under the policy involved

1. INSURANCE: contract by incompetent: validity.

a knowledge of what those rights were, and what the consequence of his choice was, and the effect that it would have on him and on those dependent on him. The determination of these questions involved judgment, discretion, and selection, and we are of the opinion that the surrender of the policy would be invalid, if Nutter was at the time mentally incapable of understanding the entire matter of selection and of exercising the judgment and discretion necessary to constitute an intelligent act.

Appellant says, however, that if it be found that the surrender was a new contract, and that the assured was then of unsound mind, there can be no recovery, because 2. SAME: avoidance of contract: *status quo.* the surrender, was fully executed in the ordinary course of business, was fair, reasonable, free from fraud, and the mental condition of the assured was not known to the defendant, and the parties can not be put in *statu quo.*

Where the parties can be placed in *statu quo,* it is the rule in this state that the contract of an insane person will be set aside, notwithstanding the fact that the other contracting party may not have known of the disability, and that the entire transaction was fair and free from fraud. *Smartwood v. Chance,* 131 Iowa, 714; *Corbit v. Smith,* 7 Iowa, 60; *Behrens v. McKenzie,* 23 Iowa, 333; *Alexander v. Haskins,* 68 Iowa, 73.

Can the parties be placed in *statu quo?* We think so. If the plaintiff is entitled to recover at all, she can only recover the amount of the policy, less the amount that the assured had received thereon during his lifetime. The amount of the two loans and the surrender value of the policy paid to Nutter were deducted from the amount that would otherwise have been due on the policy. The claim of the appellant that, if the surrender had not been made, it still might have declared a forfeiture for nonpayment of the loan due September 21, 1905, and for that reason it can not be placed in *status quo,* does not seem to us to be

sound. It had the power, it is true, to declare a forfeiture for such nonpayment, but it also might waive such power and right, and that is what we think it did do. Although the loan was nearly a year overdue, no steps had been taken to cancel the policy. On the other hand, it was recognized as being in full force and effect, and, under such circumstances, we should not indulge the presumption that, had there been no surrender, a forfeiture would have been declared between the 4th and 17th days of September, 1906, and without such presumption there is nothing to indicate that the defendant is not placed in *status quo* by the judgment herein.

In his written application for reinstatement in 1904, the assured made the representations to which we have already referred, and further stated that he did not then and

3. SAME: evidence: representations of insured.

would not thereafter use malt liquors or other alcoholic beverages to any greater extent than that warranted in his application for said policy. The evidence showed that, beginning some time in the year 1904, Nutter became an excessive, habitual user of intoxicating liquors, and that such condition continued until the time of his death. No representations or warranties were attached to the applications for either of the policies Nos. 12,244 and 28,201. The defendant offered in evidence the application made for reinstatement in 1904; but the court refused to receive it for the reason that no copy of the representations or warranties of the assured specific enough to meet the requirements of section 1819 of the Code was attached to the policy named, or to the certificate of renewal, and no defense could be interposed by the company on these grounds. As we have already seen, no representations or warranties were attached to either of the policies in question, and it is evident that the warranties contained in the exhibits offered herein are not specific enough to meet the requirements of section 1819. No specific representations or warranties were set forth in

the written application for reinstatement, or attached to the certificates of renewal. All that the assured stated on the subject was that he did not then in 1904, nor would he thereafter, use malt liquors or other alcoholic beverages to any greater extent than that warranted in his application for his original policy. The purpose of section 1819, as described by this court, is to require all representations and warranties to be attached to the policy so that all parts of the contract may be together, and that the assured may be at all times in possession of the evidence of his contract. *Johnson v. Insurance Co.,* 105 Iowa, 273. We think the exhibits were properly excluded.

Appellant further contends that this action at law can not be maintained until after the surrender of the policy and its cancellation have been set aside. Our own cases cited by the appellant do not seem to reach or decide this question, and we know of none which hold that such an independent action must first be prosecuted to a successful termination.

4. Same: surrender of policy: suit by beneficiary.

There was a disaffirmance of the act of surrender by a party having capacity to disaffirm the acts of the deceased. An insane person, acting through his guardian or personal representative, can disaffirm and avoid his contract. 2 Page on Contracts, section 899; *Whitcomb v. Hardy,* 73 Minn. 285 (76 N. W. 29); *Beasley v. Beasley,* 180 Ill. 163 (54 N. E. 187); *Louisville, etc., Ry. Co. v. Heer,* 135 Ind. 591 (35 N. E. 556).

5. Insane persons: disaffirmance of contracts.

Finally, it is said that the verdict is the result of passion and prejudice, and should not be allowed to stand. Were the writer hereof called upon to determine from the evidence presented in the record whether the assured was, at the time of surrendering the policy, mentally incapable of so doing, there would be no hestitancy in determining that he knew precisely what he was doing. But there was a conflict in

6. Same: verdict: passion and prejudice.

the evidence as to whether the mental faculties of the assured had been so seriously impaired by the use of intoxicating liquors as to render him incapable of understanding and appreciating the business he then had in hand, and we are agreed that there is sufficient evidence, showing mental unsoundness at that time, to take the case to the jury. We can not say, therefore, that the verdict is the result of passion or prejudice.

We reach the conclusion that the judgment must be affirmed, and it is so ordered. See *Searles v. Life Ins. Co.,* 148 Iowa, 65.—*Affirmed.*