ADDIE M. HICKS, as Administratrix of the Estate of SHERMAN E. HICKS, Deceased, Appellee, v. THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF MILWAUKEE, Appellant.

**Insurance:** INTEREST OF BENEFICIARY: SURRENDER OF THE SAME. The
1    beneficiary in a policy of insurance, whether upon the assessment or level premium plan, in which the right to change the beneficiary is reserved to the insured, acquires no property right or interest of any kind which can be assigned or surrendered to the insurer prior to the death of the insured.

**Same:** INSANITY OF INSURED. The insanity of an insured in a policy
2    reserving to him the right to change his beneficiary will not vest in the beneficiary any interest in the policy.

**Same:** SURRENDER OF POLICY: PLEADINGS: EVIDENCE. In an action
3    upon a policy of insurance by the beneficiary, suing as administratrix, to which the defendant pleaded a surrender of the policy and plaintiff replied thereto by general denial of the affirmative defenses, pleaded insanity of the insured and that she did not assent to the surrender of the policy, the question of the genuineness of her signature to the alleged surrender was put to issue; and under the evidence was a question for the jury.

**Same:** EVIDENCE: ADMISSIONS. The filing of the plaintiff's original
4    reply in the instant case, that her signature to the surrender agree-

ment was procured by fraud, which was later withdrawn, was not a conclusive admission of the authenticity of her signature thereto.

**Same:**   SURRENDER OF POLICY:   ACTION BY ADMINISTRATRIX.   A beneficiary has no vested interest in a policy of insurance prior to the death of the insured, where he has the right to change the beneficiary; and a surrender of the policy by the beneficiary alone will not prevent her from maintaining a suit on the policy as administratrix of insured's estate.

**Same:**   SURRENDER OF THE POLICY BY INSANE PERSON:   ESTOPPEL.   The surrender of a policy of insurance by an insane husband, in which the wife and beneficiary was induced to join, was invalid; and in the absence of fraud on her part or a change in beneficiary she was not estopped by the surrender to maintain suit on the policy as administratrix of his estate for the balance due, after giving credit for the amount paid him at the time of the pretended surrender.

**Same:**   PLEADING:   DENIAL OF SIGNATURE:   VERIFICATION.   An administratrix suing upon a policy of insurance need not deny under oath the genuineness of the signature to an instrument purporting to be a surrender agreement of the policy in suit, as in ordinary cases.

**Actions:**   LEGAL OR EQUITABLE.   A suit to recover upon an insurance policy which defendant alleged had been surrendered, but plaintiff alleged that the surrender was invalid because the insured was insane at the time, is a law action triable to a jury, even though recovery was resisted also on the ground of estoppel; and there was no error in refusing to transfer the case to equity.

**Instructions:**   REFUSAL OF REQUEST.   Where the instructions given by the court are in substantial accord with those requested, error cannot be predicated on the refusal of the requests.

*Appeal from Clarke District Court.*—HON. THOMAS L. MAXWELL, Judge.

WEDNESDAY, JUNE 24, 1914.

ACTION at law upon two policies of insurance issued by the defendant on the life of Sherman E. Hicks, now deceased. There was a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Stipp & Perry,* and *Temple & Temple,* for appellant.

*O. M. Slaymaker,* for appellee.

WEAVER, J.—The first count of the petition is upon a policy of insurance dated December 13, 1901, and numbered 502959, on the life of Sherman E. Hicks, for the sum of $2,000, payable to his wife, Addie M. Hicks; a right to change such beneficiary being reserved to the insured. No change of beneficiary appears ever to have been made or attempted by Hicks, and he died November 29, 1911. Due notice and proofs of death were delivered to the company, which refused payment, for reasons hereinafter shown. Plaintiff alleges these facts, and that the policy was in full force and effect at the date of Hicks' death. She proceeds further to state that on November 15, 1910, all premiums accruing to that date having been paid, Hicks attempted to surrender said policy to defendant, and in consideration thereof defendant paid Hicks the sum of $450.10. These facts she concedes would be a bar to a recovery in this action but for the further fact that from a date prior to said transaction until his death the insured was insane, and utterly incapable of transacting business or making a contract or appreciating the nature or effect of his acts. Plaintiff further concedes that defendant is entitled to credit upon said policy for the amount of said payment and the amount of premiums becoming due on the policy from November 15, 1910, to the date of the death of the insured, November 29, 1911, and asks judgment for the remainder of the insurance provided by the policy. This policy, plaintiff alleges, has been assigned by her in her individual capacity to the estate of Sherman E. Hicks, of which she is administrator.

The second count is upon a policy dated March 19, 1896, numbered 344311, on the life of said Sherman E. Hicks, for $1,000, payable to the administrator, executor, or assigns of said deceased. With respect to this policy plaintiff pleads substantially the same alleged facts as are set forth in the first

count, and asks judgment thereon for the amount insured, less credit for the sum paid for the attempted surrender.

The defendant admits the policies, admits due payment of the premiums thereon up to November 15, 1910, and pleads the fact of the alleged surrender as effecting a complete satisfaction of its obligation and liability on said contract of insurance. It also pleads that plaintiff herself, as beneficiary under the policy first described united in making such surrender, and is thereby estopped to maintain this action. It further alleges that if Hicks were insane, as claimed, defendant had no notice or knowledge thereof, and dealt with the deceased and his wife in good faith and paid them the full surrender value of the contract. Other defenses are pleaded which, so far as they need to be considered upon this appeal, will be stated in the further progress of this opinion.

In reply plaintiff, after denying generally the affirmative defenses pleaded, repleads her allegations that the insured was insane and incompetent to make valid surrender of the policy. In another count she alleges that the writing acknowledging the surrender of the policy and purporting to bear her signature was obtained by fraud, deceit, and duress. This allegation was afterward withdrawn, and the issue was not submitted to the jury. She also specifically denies having assented to the surrender of the policy, and denies knowledge that such surrender had been made until soon after the death of her husband, when she promptly notified defendant of her refusal to recognize or ratify it.

By demurrer to the reply and motion to transfer the cause to equity, defendant raised the legal questions which are hereinafter considered. Both demurrer and motion were denied, and exceptions duly preserved. The issues were tried to a jury. Considerable evidence was introduced by the plaintiff; tending to sustain her allegation that Hicks was insane when the surrender of the policy was made, and so continued to his death. There was also evidence tending to support plaintiff's denial of participation by her in the alleged

surrender of the policies. The defendant offered no evidence on the issue of Hicks' insanity, except as it relied upon inferences to be drawn from the proved or admitted facts attending the negotiation and consummation of the alleged surrender. As showing the plaintiff's participation in the surrender, reliance was placed upon the negotiations for surrender, the papers signed and delivered as a part of the transaction, and certain alleged admissions and inconsistencies in the petition and reply and in the testimony of Addie M. Hicks. Motion for directed verdict for defendant was overruled. There was a verdict and judgment for plaintiff for the amount of the policies, less admitted credits. The net amount found due on policy No. 502959 was $1,533.56 and on policy No. 344311, $326.15. Motion for judgment for defendant notwithstanding the verdict and for new trial were overruled. In presenting its case here defendant waives its appeal as to the judgment on the second count of the petition, but argues for a reversal of the judgment on the first count.

I. Counsel have formally assigned many errors, but in their brief they have materially aided the court by grouping all the points on which they rely under two general heads. Of these the first proposition is stated as follows:

The beneficiary, Addie M. Hicks, having joined with the assured, Sherman E. Hicks, in surrendering policy No. 502959 is bound by such surrender, and is estopped now to assert that the assured was at the time of unsound mind, or that any fraud, misrepresentation, or duress was practiced upon her by said assured in inducing her to unite with him in surrendering said policy to the defendant.

With this introductory proposition counsel proceed to build up their argument in the following manner:

(1) That, as the beneficiary named in the policy, plaintiff had a vested property right in the insurance so provided; (2) that, having such vested right, she was competent to waive or surrender the same without the co-operation of her husband

and without regard to his mental condition; and (3) that the record shows conclusively and as a matter of law that plaintiff did make such surrender, and she is therefore estopped to maintain this action.

Let us consider these points in the order stated. It will be remembered that, while the policy in this suit names Addie M. Hicks as beneficiary, it reserves the right to her husband to change this designation at will and name or appoint some other person to receive the benefits of the insurance. Whatever may be the holdings in other jurisdictions, it is well settled in this court that the beneficiary of a policy so conditioned "acquires no vested right therein or in the insurance which it represents" until the death of the insured without having exercised his power of appointment. *Townsend v. Fidelity,* 163 Iowa, 713; *Carpenter v. Knapp,* 101 Iowa, 729; *Wandell v. Mystic,* 130 Iowa, 639. And, so far as this reserved power affects the rights of the beneficiary, it is immaterial whether the insurance contract be upon the assessment or level premium plan. *Townsend v. Fidelity, supra.*

1. INSURANCE: interest of beneficiary: surrender of same.

In the *Carpenter* case, *supra,* we held that, where the right to change the beneficiary exists, not only does the person named in the policy acquire no property right but no right or interest of any kind which he can assign or transfer to another "until the death of the assured." If this be true, and the beneficiary obtains no right either vested or contingent, which he can assign or transfer to another until the death of the insured person, it is difficult to understand on what principle Addie M. Hicks can be said to have had any right in the insurance which she could surrender to the company. She was not a party to the insurance contract, nor would she become a party to it until her relation thereto should be fixed by the death of the insured without having appointed a new beneficiary. Indeed, in the absence of any controlling authority for the proposition of counsel upon this feature of the case, we think the courts should be slow to

recognize the right of an insurance company or association to escape its obligation by dealing with the beneficiary without the consent of the insured or where the insured has become insane and therefore incapable of giving consent. To hold otherwise would be to give free rein to insurers so disposed to seek out beneficiaries of such insurance and bargain for waivers at nominal rates and leave the insured person to go on paying premiums and rates to the end of his days. It is due to the appellant in this connection to say that the record discloses no evidence of unfair dealing on its part. The negotiation for the surrender of the policy by the deceased was carried on by correspondence, and there is nothing to show that the company had knowledge of Hicks' mental condition. Appellant's brief has been prepared with much care and many authorities have been cited in support of the defense. These precedents thus called to our attention are too numerous to admit of their review in this opinion, except as we may speak of them collectively. We have taken pains to verify the citations to ascertain what they appear to determine and, in our judgment, none of them is quite in point. As a rule they deal with policies or certificates of insurance in which no power is reserved to the insured to make a change of beneficiaries; others relate to the law governing contingent interests in real estate and call for the application of entirely different principles; and in so far as any of them afford support by analogy for the position taken by appellant, they are out of harmony with our own cases. Indeed, there is but little harmony in the courts of the several states upon this and some other kindred questions. Our own rule appears to effectuate substantial justice, and we see nothing to be gained by abandoning it.

Nor can we adopt appellant's view that the insanity of Hicks operated to vest plaintiff with a property right in the policy. No authority is cited to that effect, and we are quite confident none can be found. By the terms of the policy itself plaintiff could obtain no right therein until the death of her husband without having

2. SAME: insanity of insured.

exercised his power to designate another beneficiary. Of course, when the husband became insane he could not effectually exercise his power of appointment, but he was neither physically or civilly dead. He might yet be restored to mental health and desire to make such change. The power to name a new beneficiary, though suspended or in abeyance during his insanity, was not lost, and no right could vest in any beneficiary until the happening of the contingency provided for in the policy—the death of the insured. The substance of the contract evidenced by a policy of this kind is that the insurer will pay the prescribed benefit to the person whom the insured shall have last designated to receive it. The appointment or designation made in the policy as issued is tentative only, and continues only until the insured shall have named some other person, or until his power so to do shall have been terminated by his death.

II. The record does not bear out the appellant's contention that the execution of the instrument or surrender by plaintiff is admitted, or that the evidence to that effect is con-

3. Same: surrender of policy: pleadings: evidence.

clusive. Contrary to the view of counsel, we think the reply of plaintiff does put the authenticity of that writing in issue, and the trial appears to have proceeded on that theory. The instrument in question purports to be signed by the insured and plaintiff, and is attested by Cynthia E. Smith and Maria Smith. The plaintiff was examined as a witness, and, referring to said paper, said:

I do not think it is my signature. I never signed anything that had this on it. I recall signing some papers. Mr. Hicks told me it was a loan on the insurance company. I never authorized any one else to put my signature there.

Referring to the indorsed names on the company's check for the surrender value of the policy she said:

It is not my signature and I did not authorize any one else to write it.

And this is repeated and emphasized on cross-examination. In corroboration of this denial Cynthia Smith, whose name appears as a subscribing witness on the paper first mentioned, says she attached her name to it at the request of Hicks, but she did not see him or Mrs. Hicks sign it, nor did Mrs. Hicks acknowledge it to be her signature. Mrs. Hicks she says was in the house at the time, but did not see the witness sign the paper. The other subscribing witness says:

I did not see anybody write the name Sherman E. Hicks there. I did not see Mrs. Hicks sign her name on that paper. She never told me it was her name and ask me to witness it. I do not know whether Mrs. Hicks was present at the time I signed it. . . . Mr. Hicks said he had some papers that he wanted Mother and I to sign. . . . He said it was concerning his insurance papers, and wanted to have Mother and me to sign it. This took place at our home. Mrs. Hicks was at our home. I don't think she saw me sign the paper. She was in the dining room. She was in one room and we in another.

Other testimony developed the fact that Hicks held another policy issued by the Penn Mutual Life Insurance Company, upon which he obtained a loan about the time of the surrender of the policy in this case. The note or obligation given for repayment of that loan was produced in evidence by the appellant, and, upon being confronted with it, Mrs. Hicks admitted her signature thereto.

It is true also that the reply, as originally filed, contained a plea in the nature of a confession and avoidance, alleging that the wife's signature to the instrument of surrender had

4. SAME: evidence: admissions.

been secured on the representation of her husband that he was obtaining a loan on his policy, and by threats and coercion exercised by him. Though this plea was afterward withdrawn, and does not appear to have been offered in evidence, we may, for the purposes of this appeal, treat it as though such offer had been made. Upon such a record we cannot hold that the execution

of the paper by the wife was conclusively established.   The
testimony, as a whole, strongly tends to show that at the time
in question Hicks was a sufferer from epilepsy of the most
violent character, and that his physical and mental demoraliza-
tion from this cause had been aggravated by excessive intem-
perance in the use of intoxicants.   His conduct toward his
wife was harsh and imperious, and, according to her story,
he demanded her signature to a certain paper, on the repre-
sentation that the purpose of it was to obtain a loan, and
threatened to leave her if she did not consent to it.   Upon this
representation she signed the paper presented by him, not
knowing its contents, but supposing it to be what Hicks said
it was.   Assuming that she tells the truth (and her credibility
was not a matter for the court to pass upon), the jury was
justified in finding that the paper which she admitted having
signed under such circumstances was the one used in the
transaction with the Penn Mutual, where a loan was, in fact,
obtained.   Indirectly this circumstance affords some support
for her claim that she did not sign the surrender of the policy
in the defendant company, or rather it serves to explain the
inconsistency between her testimony and the plea of confession
and avoidance which was withdrawn before the cause was
submitted for a verdict.   Hicks seems to have been carrying
five policies of insurance, each for a moderate amount.   His
demand upon his wife to unite with him in procuring a loan
and her complying therewith under the depressing and the
distracting circumstances in which she was placed would
hardly leave upon her memory any very distinct impression
concerning the particular policy upon which such loan was to
be made.   When, therefore, she was confronted by the answer
in this case pleading a surrender of the insurance and setting
up a voucher purporting to be signed by herself, it was not
unnatural for her to take it for granted that the instrument so
pleaded against her was the one she had signed.   If, upon
maturer reflection, or upon having her memory refreshed by
the production of the papers in the Penn Mutual loan, she

found or believed she was mistaken in her first statement, she could change her pleadings accordingly without forfeiting her right to go to the jury upon the issues as thus modified, and her former admissions would not be conclusive against her upon such issue.

But there is another aspect of this case which is worthy of appellant's attention even on the assumption that the wife had some right or interest in the policy, and that the effect

5. SAME: surren-
der of policy:
action by ad-
ministratrix.
of her alleged act would work a surrender or release of such right on her part, while her husband, being insane, was not bound by the surrender on his part. In what manner can that fact operate to wholly release the company from its obligation as an insurer? The husband being insane, the insurance, so far as he is concerned, was left unimpaired; and, if the wife's act eliminated her as a beneficiary of that insurance, the company's obligation to the husband to pay the insurance to whomsoever he might appoint was in no manner discharged. Had the wife died before her husband, it would not have terminated the contract, but upon his death the insurance would have been due to the new beneficiary, if one had been appointed, and, if no appointment had been made, the payment would have been due to the administrator for the benefit of the estate of the husband. The plaintiff is not suing in her individual right, but as administratrix, and, if anything is due from the appellant to that estate, she is entitled to recover it, even though it be held that she has estopped herself from claiming it in her own right. In short, the utmost effect of her act would be to deprive her of her status as to the designated beneficiary. Stated otherwise, she could, if appellant is correct, cut herself off from any right to receive the benefit in her own right, but we are satisfied she could not relieve the defendant from its obligation to the insane husband, nor could she estop the administrator of his estate from the right to demand payment of the policy in case there was no named beneficiary qualified to receive it at the death of the intestate. So, taking either theory as to the power

of a beneficiary to surrender her interest under a policy of insurance which reserved the power to change such designation at will, we are led inevitably to the same conclusion—that the obligation of the insurer is not and cannot be affected without the consent of the person insured.

III. Many of the questions dealt with in argument were eliminated from the case by the charge of the court in which the jury were told that the only question of fact to be decided

6. SAME: surrender of policy by insane person: estoppel.

by them was "whether, at the time of the alleged surrender of the policies sued upon and the execution of the written acknowledgment of such surrender, Sherman E. Hicks was of sound or unsound mind." From the rulings and remarks of the court upon the trial it is evident that it held to the theory that the wife had no vested interest in the policy during the husband's lifetime, and that her signature to the voucher, whether genuine or not, gave to the writing no added or other or different effect than it would have had if it had been executed by the husband alone. This theory accords with the views we have already expressed, and, if correct, and the jury were justified in finding Hicks insane, all collateral questions become immaterial, and the case is one for affirmance.

That the plaintiff made a clear case for the jury upon the matter of her husband's mental condition is not open to reasonable question. We do not care to recite the harrowing story of the unfortunate man's condition resulting from the fearful malady which for several years made his life a continuous nightmare of horrors and weakened his powers of resistance to the demands of an inflamed appetite for drink. Not members of the family alone, but disinterested neighbors, together with physicians who knew and observed his condition, united in testifying to his mental incapacity. No attempt was made by the defendant to weaken the force of this plea by offering the testimony of witnesses, expert or nonexpert, and, so far as this issue is concerned, it must be accepted as settled that Sherman E. Hicks, at the time of the alleged surrender, and

thence to the day of his death, was insane to a degree incapacitating him for the transaction of business. This being so, then, under the doctrine of *Nutter v. Insurance Co.*, 156 Iowa, 539, but recently decided by this court, the surrender of the policy was ineffective, and plaintiff is entitled to the benefit of her verdict, unless we are required to hold that, under the peculiar facts of this case, she is in some way estopped from asserting what would otherwise be her undoubted right.

Appellant contends that she is so estopped because, as beneficiary under the policy, she had a vested right in the insurance which she could and did surrender, and because also, by signing the paper with her husband when she knew he was insane, she thereby deceived and misled the defendant to its injury. But, for reasons already stated, there can be no such estoppel in this case. For, assuming, as we must, Hicks' insanity and the consequent invalidity of the attempted surrender, the contract of insurance between him and the company was left in full force. Upon the death of Hicks the company's liability to pay became fixed, and the only legitimate question in the case was with respect to the person entitled to receive it. The wife was the only person who had ever been named as beneficiary, and, if by any act on her part during the lifetime of her husband she disqualified herself as such or ceased to be a beneficiary, then, as we have said, the insurance accrued to the benefit of the husband's estate, and his administrator was entitled to recover it. Nor do we find anything in the record to justify the court or jury in holding that plaintiff by any representation or deceit or misleading conduct induced the defendant to act to its injury. Although the appellant acted in entire good faith and paid a small part of the face of the policy in consideration of the supposed surrender, it still suffers no injury, if, when the insanity of Hicks and the consequent voidable character of the deal is shown, the court so controls the judgment as to restore the parties to their *status quo;* and this the court below did by giving the

company credit for all it had paid and accrued premiums, with interest. See *Nutter v. Insurance Co., supra,* where a like state of circumstances was considered.

IV. The exceptions taken by appellant to rulings upon its demurrer to the reply, its motion to direct a verdict, and motion for a new trial are substantially all controlled by the conclusions announced in the preceding paragraphs.

7. SAME: pleadings: denial of signature: verification.

It is said, however, that plaintiff's reply taking issue upon the alleged surrender by her is not verified, and she cannot be heard to deny her signature. But she sues as administratrix, and, as such, she is not required to verify her pleadings. Code, section 3586; *Ashworth v. Grubbs,* 47 Iowa, 353. So, also, as to the effect of Code, section 3640, see *Fannon v. Robinson,* 10 Iowa, 272; *Sully v. Goldsmith,* 49 Iowa, 690.

V. The second main proposition in appellant's brief is that the court erred in refusing to transfer the case to equity. As the case was finally tried and submitted to the jury, there was no issue of an equitable nature. The controlling question—the mental capacity of Hicks—was clearly one of fact, and there was no error in denying the motion for transfer. We assume the position of counsel in this respect is based upon the thought that the proceeding is in the nature of an action to vacate or set aside or rescind a contract. But such does not appear to be the case. The cause of action stated in the petition is an alleged breach of the defendant's contract to pay a stated sum of money upon the death of the insured person. The answer admits the contract of insurance, but says that by a subsequent contract upon a sufficient consideration the insurance was surrendered and abandoned. In reply the plaintiff denies the surrender, and alleges the insured was mentally incompetent to make a surrender. It also pleads matters of estoppel. In short, it is an ordinary action upon contract for the recovery of a money judgment, to which only defenses of ordinary legal character are pleaded. To entitle plaintiff to recover, no equitable pro-

8. ACTIONS: legal or equitable.

ceeding to set aside the surrender was required. It was enough for such recovery that she show to the reasonable satisfaction of the jury that Hicks was insane, and therefore the contract .of surrender was unenforceable, and no defense grounded thereon. The same point was made and overruled in the *Nutter* case, *supra*.

The further thought of counsel that, the defendant having acted in good faith and without knowledge of Hicks' incompetency, the plea of insanity cannot be sustained in this case has apparent support in some of the authorities cited from other jurisdictions, but we are committed to the rule that such fact is available to the beneficiary, even though the insurer took the surrender believing the insured in sound mind. See the case last cited and *Swartwood v. Chance*, 131 Iowa, 714. Indeed, if we eliminate the question whether the wife signed the instrument of surrender with her insane husband, a question we hold not to be of decisive importance, the case before us is practically on all fours with the *Nutter* case, and, following that precedent, we cannot do otherwise than affirm the judgment below.

It may be added in closing that it is quite doubtful whether the defendant is in any position to question the correctness of the court's instruction which made plaintiff's right to recover depend upon the fact as to Hicks' mental condition. Among the instructions asked by the defendant was one in the following form:

9. INSTRUCTIONS: refusal of requests.

The court instructs the jury, as a matter of law, that, unless the plaintiff has proved to the satisfaction of the jury that the assured, Sherman E. Hicks, was of unsound mind on November 18, 1910, and at the time of the surrender by the said Sherman E. Hicks of the policy Exhibit 2, your verdict must be for the defendant; that is to say, unless the testimony has satisfied your minds that at the time of the said surrender that the mental condition of the said Sherman E. Hicks was such that he could not comprehend the nature and

effect of the contract of surrender, then your verdict should be in favor of the defendant.

The court did instruct as follows:

Before plaintiff can recover, she must show by a preponderance of the evidence that, at the time the surrender was made and the writings acknowledging the same were executed, the said Sherman E. Hicks was of unsound mind to such an extent as made him incapable of knowing or understanding the nature of what he was doing.

And again:

If the deceased was, at the time of signing the surrender in question, insane, or of unsound mind, and destitute of reason to such an extent as not to know the nature, effect, and consequences thereof, it is void and your verdict should be for the plaintiff.

It will be observed that the instruction asked and the one given differ only in the fact that the latter is stated affirmatively while the former is stated negatively, or, rather, defensively.

It is too well settled to require citation of authorities that there is no reversible error in giving an instruction which is in harmony with one asked by the appellant. As the foregoing conclusions are reasonably decisive of the case and of the appeal, further discussion is unnecessary.

For the reasons stated, the judgment below is—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concurring.