GOULD, DRAPER & CO. v. HURTO ET AL.

1. **Appeal to Supreme Court:** KIND OF PROCEEDINGS: QUESTION NOT RAISED BELOW. While it has been held (*Cerro Gordo County v. Wright County*, 59 Iowa, 485), that where the court below had no jurisdiction of the parties or of the subject-matter, the objection might be raised for the first time in this court, yet an error as to the kind of proceedings is not jurisdictional (Code, § 2514), and objection to such error must first be raised in the court below.

2. **Fraudulent Conveyance:** CHARGE OF NOT SUSTAINED BY EVIDENCE. Upon consideration of the evidence in this case, it is held insufficient to sustain the charge of a fraudulent conveyance to delay and defeat creditors, so far as appellants are concerned.

*Appeal from Scott Circuit Court.*

THURSDAY, APRIL 19.

THE defendant, S. H. Hurto, on the 28th of October, 1881, was engaged in the grocery business in the city of Davenport. He owned and operated two stores, or business stands, in different parts of the city. On the day above named he made a bill of sale to his co-defendants, John Lambert and John Hurto, by which he conveyed to them all the merchandise in his two stores, the delivery wagons and horses used in the business, and all his books, accounts and notes, and all other property owned by him, except such as was exempt from execution. The purchasers took possession of the property and formed a partnership styled Lambert & Hurto, and continued the business. The plaintiffs, who are creditors of S. H. Hurto, immediately commenced actions in attachment, and caused John Lambert and John Hurto to be garnished. Afterwards the plaintiffs filed a petition in equity, in which they claimed that the sale of the property was fraudulent as to the creditors of S. H. Hurto, and that the transaction was not an absolute sale, but was intended by the parties thereto "to be only a security and lien in the nature of a chattel mortgage, and

was made and taken under a secret agreement and understanding between said defendants, that the surplus, after paying the *bona fide* and unfictitious indebtedness intended to be secured thereby, derived from the sale and conversion of said property, should be paid over to said S. H. Hurto, or held for his use and benefit, and paid out under his directions, and that said security was made in the form of an absolute transfer of the property, so as to put it in the power of John Hurto and Lambert to turn over the surplus of said property to S. H. Hurto, and place the same beyond the reach of his creditors, and was so made and done with intent to hinder, delay and defraud his creditors."

It is also averred in the petition that, at the time of the said pretended sale, some of the creditors of S. H. Hurto were pressing him for payment of their claims, which was known to John Hurto and Lambert. The prayer of the petition was that upon the final hearing the said bill of sale be set aside, and the property, or the proceeds thereof, be applied to the satisfaction of the attachment liens of the plaintiffs, and for general equitable relief.

The defendants, John Hurto and Lambert, by their answer, denied the allegations of the petition, and averred that the sale of the property was absolute and in good faith upon their part. The attachment suits proceeded to judgment against S. H. Hurto, and after such judgments were obtained the plaintiffs amended their petition by averring that fact. The cause was tried to the court as an equitable action, and a decree was entered declaring the sale of the goods to be fraudulent as against the plaintiffs, and judgment was rendered for them, and against John Hurto and Lambert, for their claims, amounting in the aggregate to $786.45. The defendants, John Hurto and Lambert, appeal.

*Stewart & White*, for appellants.

*Martin, Murphy & Lynch*, for appellees.

ROTHROCK, J.—I. We have in this case an action in equity in which the plaintiffs, as creditors of S. H. Hurto, seek to

1. APPEAL to supreme court: kind of proceedings: question not raised below.

set aside and annul a sale of his personal property to his co-defendants, upon the ground that such sale was made to hinder, delay and defraud the plaintiffs and other creditors. It is well understood that the usual proceeding in such cases is the levy of an attachment by the creditors, and a replevin of the goods by the purchaser; and the trial of the action in replevin determines the rights of the parties; and the present action, to say the least, is a novelty.

In a supplemental argument filed by counsel for appellants we are asked to dispose of the case upon the ground that the court below had no jurisdiction to entertain and try the action. The question is for the first time raised in this court, and in a supplemental argument, and it is claimed that a want of jurisdiction may be raised at any time. It is correct that, where a court has no jurisdiction of the subject-matter of the action, or of the parties thereto, the objection may be raised for the first time in this court. *Cerro Gordo County v. Wright County*, 59 Iowa, 485. But in this case the circuit court had full jurisdiction of the parties. It also had jurisdiction of the subject of the action—which was a controversy between the parties as to whether the sale of the goods was or was not fraudulent. The form of the action to test this question did not pertain to the jurisdiction of the court. An error as to the kind of proceedings adopted will not cause the abatement or dismissal of the action. Code, § 2514. When the plaintiffs amended their petition in the attachment proceedings, they averred therein that their attachment liens were then in full force and virtue, as alleged in the original petition. The defendants did not answer the amendment, and the record does not show that any objection whatever was made to the form of the action by demurrer, motion or otherwise. We think the objection now made, comes too late.

II. Counsel for both plaintiffs and defendants have elaborately argued the case upon its merits. The evidence, as is usual in such cases, is quite voluminous. We have examined the whole record with care, and without entering upon a discussion of the evidence in detail, we think the following facts are fairly established: S. H. Hurto had been engaged in the grocery business for several years. John Hurto is his father and John Lambert is also a relative. John Hurto and Lambert are advanced in life, and have little knowledge of business affairs. They had some property, and, their names being good security in bank, they were indorsers for S. H. Hurto on bank paper for about $4,400. He was also indebted to his father in the sum of about $500 or $600 for borrowed money, and to Lambert in a small amount. Marietta Hurto, his wife, held a chattel mortgage on the goods for the sum of $700, being for money borrowed, and Van Patten and Marks held another chattel mortgage upon the goods, amounting to several hundred dollars. S. H. Hurto was also indebted in a considerable amount to other general creditors, and he was pressed for payments which he could not make. In this condition of his affairs, he called in his father and Lambert, and stated to them that he could not pay his debts, and offered to secure them by chattel mortgage or otherwise. On consultation it was agreed that John Hurto and Lambert should purchase the goods, and the sale was closed up at once, and in the night of October 28, 1881. The consideration for the purchase was the discharge of the indebtedness to the purchasers and the payment of the bank debts, the chattel mortgages, a small amount due the clerks in the stores, some back rent of the stores, and some other small items. The goods were worth about $8,000, and the debts, released and assumed, as near as we can estimate them from the evidence, was $6,750. The court found that the sale was a fraudulent transaction. We do not think this finding is supported by the evidence. Whatever fraudulent intention or purpose may have been in the

*2. FRAUDULENT conveyance : charge of not sustained by evidence.*

mind of S. H. Hurto, we do not think that there was any participation in any fraudulent intent by the other defendants. As a matter of fact they did not know that S. H. Hurto was indebted for any other amounts than the chattel mortgages, the bank debts, and their own, and the other small amounts they agreed to pay. It is said, however, that they should have ascertained his financial condition by inquiry. If they had been volunteers, and not *bona fide* creditors, there would be much force in the argument. But it is claimed that as to the bank debts they were not creditors; that their liability was only contingent. It is true that they were not creditors in the sense that they had rights of action against S. H. Hurto, but they were advised that he was unable to pay his debts, and they had the undoubted right to protect themselves in good faith on their liability as his sureties.

It will be seen from the above statement that the property purchased was worth $1,250 in excess of the price agreed to be paid. It is charged that the sale was fraudulent, because the parties thereto agreed that the surplus should be held by John Hurto and Lambert in secret trust for S. H. Hurto, in fraud of other creditors. We do not think this claim is supported by the evidence. Taking all of the evidence together, the impression made upon the mind therefrom is that John Hurto and Lambert were honestly seeking to protect themselves from loss by the insolvency of S. H. Hurto. They took the goods without knowing their exact value, and without knowing exactly what they would be liable for. They did not buy upon speculation, but merely to save themselves from loss. They repeatedly stated after the transaction that, if there was any surplus after saving themselves harmless, it would go to the other creditors, and we think that under the evidence this should be held to be the nature of the transaction. The defendants should be held liable to other creditors in the sum of $1,250, and no more.

As the amount of the judgments in this case are less than that amount, the finding we make will not lead to a reversal.

of the case. But we think it is due to the defendants than they should be exonerated from the charge of fraud, and that they should not be embarrassed by such a finding in any other litigation which may grow out of this transaction.

AFFIRMED.