DAVID N. AYRES, Guardian, Appellee, v. GUS NOPOULOS, Appellant.

TRIAL: Calendars—Transfer from Law to Equity Sole Remedy. Defendant's plea to the jurisdiction of the court because the action is at law, when it ought to be in equity, is unknown to our practice. A transfer, on motion, to equity is the sole remedy.

SALES: Construction of Contract—Severable (?) or Indivisible (?) A bill of sale which transfers different fractional parts of property to different parties for different prices is a severable contract.

PARTNERSHIP: Contract—Construction. A contract which simply provides that, on the happening of certain conditions, the parties will enter into a partnership agreement cannot be deemed, in and of itself, to constitute such agreement.

INSANE PERSONS: Guardianship—Disaffirmance of Contract—Tender. The guardian of an incompetent may disaffirm the contract of his ward without going into equity, and recover the amount paid by the ward on the contract.

SALES: Disaffirmance—Sufficiency. Where a party has not received the property purchased and paid for, and the status quo has not been disturbed, a notice to the adverse party of disaffirmance and rescission is all-sufficient.

WITNESSES: Confidential Communications—Competency. An attorney may, of course, very properly testify to what a party publicly said in a court room in the presence of the court and others, when no professional relation existed between the attorney and the declarant.

EVIDENCE: Opinion Evidence—Mental Unsoundness—Cross-examination. A witness who testifies to the mental unsoundness of a party may, on cross-examination, be questioned as to his knowledge of rumors in the neighborhood as to the party's mental condition.

Headnote 1: 1 C. J. p. 33 (Anno.); 38 Cyc. p. 1291. Headnote 2: 13 C. J. p. 562; 35 Cyc. p. 114. Headnote 3: 30 Cyc. p. 358. Headnote 4: 32 C. J. p. 733. Headnote 5: 35 Cyc. pp. 146, 156 (Anno.) Headnote 6: 40 Cyc. pp. 2363, 2377. Headnote 7: 22 C. J. p. 704 (Anno.); 40 Cyc. p. 2498 (Anno.)

*Appeal from Muscatine District Court.*—D. V. JACKSON,
Judge.

NOVEMBER 22, 1927.

Action at law, to recover the purchase price of certain
personal property sold under bill of sale by the defendant (but
not delivered) to A. A. Ayres, a person alleged by plaintiff,
guardian of A. A. Ayres, to be of unsound mind at the time of
the sale. Cause submitted to a jury, the trial resulting in a
verdict for the plaintiff in the sum of $2,500, with interest.
From the judgment entered thereon the defendant appeals.—
*Affirmed.*

*F. A. Martin* and *Glenn D. Kelly,* for appellant.

*Thompson & Thompson* and *A. R. Whitmer,* for appellee.

DE GRAFF, J.—The petition as filed contained three counts.
The first count alleged that the contract of sale was null and
void, by reason of the fact that plaintiff's ward was insane at
the time the written contract of sale was executed, and that
defendant knew of Ayres' mental unsoundness. The second
count predicates the recovery of the purchase price on the
ground of fraud and misrepresentation. The third count alleges
failure of consideration.

The first count only was submitted to the jury. Thirty-
three assignments of error are presented by the appellant; but,
for the sake of brevity, we deem it unnecessary to follow the
winding pathway marked out, as many of the propositions in-
volved are but duplications of the legal principles which con-
trol the primary thought.

At the outset, it is insisted by the appellant that the trial
court did not have jurisdiction to hear and determine this
cause, for the asserted reason that this is an action to rescind
the contract in question, and that the court must
rescind *in toto;* and also, that a money judg-
ment will not restore the *status quo* of the parties
to the contract. We therefore inquire first,
What is the nature of this action; and second, in what manner
was the instant challenge presented to the trial court? The

1. TRIAL: calendar: transfer from law to equity sole remedy.

prayer in plaintiff's petition did demand a money judgment. Did the action arise *ex contractu* or *ex delicto?*

The gist of the submitted count has reference to the unsoundness of mind of the vendee named in the written contract in suit, and by reason of the pleaded facts, it is alleged that:

"There was no meeting of the minds of said A. A. Ayres and defendant on the terms, conditions, and stipulations contained in the written contract, and that said written instrument, even though signed by plaintiff's ward, was and is a nullity."

There was nothing in the petition that suggested the intervention of a court of equity. It is clear that the action was at law, seeking a recovery in damages, measured by the amount of the purchase price paid by the plaintiff's ward to the defendant for the goods and chattels covered by the executed bill of sale. The action was commenced at law, and it continued to be such, even though the defendant interposed an equitable defense by way of answer. *Peoples Tr. & Sav. Bank v. Engle,* 194 Iowa 518.

The defendant admits the execution of the contract in suit, and further pleaded, in answer, that the court had no jurisdiction, because the plaintiff is attempting to rescind the contract, and that equity alone has exclusive jurisdiction in rescission, and further, that the court cannot restore the *status quo* of the parties of this contract in an action at law. It is clear that the defendant was fully apprised of the nature of this action at all times, yet no motion was filed to transfer said cause to the equity docket. He did file a demurrer to the pleadings, which was overruled.

The district court exercises both legal and equitable functions; and although a party states facts that constitute a good cause of action, but makes a mistake as to the kind of relief sought, he is not required to go through the useless form of a dismissal, in order to get on the right side of the court calendar. If a party desires to take advantage of any error as to the forum adopted, he must do so by motion to transfer, and a failure so to do is a waiver of the objection. *Reiger v. Turley,* 151 Iowa 491.

Upon the overruling of the demurrer, the defendant proceeded in the trial of the cause, and at the conclusion of the

plaintiff's testimony, moved the court to direct a verdict in favor of the defendant, and therein alleged that the action was in the wrong forum. Under the issues, the motion to direct was not well based. *Dilenbeck v. Security. Sav. Bank,* 186 Iowa 308. The defendant did not, in fact, ever move the court to transfer the cause, or any part thereof, to equity, and, as said in *Lutton v. Baker,* 187 Iowa 753:

"If it was not a proper basis for the equitable relief sought, that was as true and. as apparent when the petition was filed as it was at the time when the motion was made."

A motion to transfer from law to equity should be timely. *Tolerton & Warfield Co. v. Carlson,* 200 Iowa 366. See, also, *Conyngham v. Smith,* 16 Iowa 471; *Hatch v. Judd,* 29 Iowa 95; *Gould, Draper & Co. v. Hurto,* 61 Iowa 45; *Matthews v. Luers Drug Co.,* 110 Iowa 231; *Kamrar v. Butler,* 164 Iowa 293.

At this point, it may be well to note the terms of and the parties to the contract in suit, and it may be observed that the appellant claims that the contract is not severable, and that it also created a partnership; whereas, the appellee contends that the contract is severable, and dealt with three separate subject-matters, between three different persons. We therefore determine who the real parties in interest are, and whether or not the contract was so drawn that there were two sales: one to A. A. Ayres, and one to a person named Hudler. Were these two sales dependent and interrelated, and therefore non-severable? Was there a contract of partnership, or simply a conditional executory contract to form a partnership *in futuro?*

2. SALES: construction of contract: severable (?) or indivisible (?)

The caption of the contract is "Agreement to Form Partnership and Bill of Sale." This was a mere name, and is not, *per se,* controlling. The contract was entered into September 10, 1924, between the defendant Nopoulos, designated as first party, and A. A. Ayres, designated as second party, and V. C. Hudler, designated as third party; and it is recited that first party "sells to the second party an undivided one-half interest" in certain confectionery store fixtures located in storage in the Freeden Building, in Wilton Junction, Iowa, and that second party "agrees to purchase an undivided one-half interest in said fixtures for the sum of $2,500." In the next paragraph it is recited that first party "sells to third party (V. C. Hudler)

an undivided one-fourth interest in all of said confectionery store fixtures,'' for the sum of $1,250. In the next paragraph it is recited that it is ''agreed between all of the parties hereto that as soon as a location can be secured and agreed upon, said three parties will enter into a partnership agreement for the running and maintaining of a confectionery store, using and installing the fixtures above described,'' and further designating the pro-rata division of the profits or losses to be shared by the parties.

There is evidence sufficient to warrant the conclusion that V. C. Hudler was a ''straw'' woman,—a ''Molly-make-believe'' in the transaction. She was not present when the contract was executed, nor was she called as a witness upon the trial. The attorney who drew this contract thought that Clarendon Hudler (brother of V. C. Hudler), who signed the contract, was the contracting party, and refers to this party in the contract in the masculine gender. It is also shown that Clarendon Hudler had absconded, and was therefore silent at the time of the trial; but we view these matters as incidental and immaterial in determining the issue before us. Sufficient to state that there was a direct sale of a certain interest by the defendant to A. A. Ayres in the chattels purchased, and also a direct sale of a certain interest to V. C. Hudler.

Each sale stood on its own bottom. Neither was contingent, conditioned, nor dependent upon the other. The contract is divisible and severable in character, and it is quite apparent that it was intended to be so by the defendant

3. PARTNERSHIP: contract: construction.

Nopoulos and his brother-in-law, Clarendon Hudler. A default by one of the purchasers in any respect would not be a defense for the other purchaser. Furthermore, we cannot construe this contract as a partnership agreement. If anything, it simply contemplates that a partnership would be entered into, when and in the event that a location could be secured and agreed upon by the three parties to the contract. In the light of later developments, this contractual provision was a mere loophole for the defendant and his co-conspirator. A reading of the testimony of the defendant himself will convince the fair-minded reader that V. C. Hudler had nothing to do with the transaction, and had no interest in the contract. This is the reflex of the stage setting disclosed by

the evidence. No location was ever selected by these parties, and the reason is apparent.

The plaintiff, as guardian of A. A. Ayres, had the right to disaffirm and void this contract, without resorting to a court of equity. *Nutter v. Des Moines Life Ins. Co.*, 156 Iowa 539.

**4. INSANE PERSONS: guardianship: disaffirmance of contract: tender.** The guardian did, in fact, disaffirm the contract, and the notice was sufficiently specific to give to the defendant full notice of plaintiff's intention to disaffirm. Later, specific oral notice of repudiation was given to the defendant, to which he replied: "I won't pay it back, absolutely,—you will have to sue me."

Since we hold that this action was commenced at law, and no proper and legal challenge was made thereto by the defendant, the plaintiff is still in court. He was under no obligation to join the defendant with anyone. A joint and several liability existed, and it was the legal privilege of plaintiff to single out this defendant and commence action against him. *Lambertson v. National Inv. & Fin. Co.*, 200 Iowa 527; *Dickson v. Yates*, 194 Iowa 910.

It is also well settled that a party to a contract voidable by reason of mental unsoundness at the time of the procurement of the contract may maintain an action to recover the sum paid, by giving notice to the other party of **5. SALES: disaffirmance: sufficiency.** his election to disaffirm and rescind the contract, and offering to restore the *status quo*. Where a party has not received the property purchased and paid for, and the *status quo* has not been disturbed, a notice of disaffirmance and rescission to the adverse party is all that is necessary before commencing suit against him for a money judgment for the purchase price so paid. *Kent v. La Rue*, 136 Iowa 113.

The instant defendant is the sole person as grantor in the bill of sale to plaintiff, and is the sole person to whom the purchase money was paid, and is the only party defendant in interest in this suit. 13 Corpus Juris 562 *et seq.*

It is urged by the appellant, in another assignment of error, that the evidence is not sufficient to sustain the verdict. A jury question was presented. The evidence bearing upon the mental soundness of the ward at the time the contract was executed, is in conflict. No purpose will be served in reviewing the evi-

dence, and it is sufficient to say that the plaintiff met the burden resting upon him.

Complaint is also made that the court erred in ruling certain objections made by the defendant to the admission of evidence. An attorney who did not occupy the relation of attorney and client to the defendant was permitted to testify

6. WITNESSES: confidential communications: competency.

that the defendant had valued the property mentioned in the contract in a certain amount at a time when a proposition for settlement and compromise was under consideration in another case that was pending. The conversation took place in a court room, in the presence of the court and others. It is clear, under the facts, that the communication to the attorney was not given in professional confidence.

Error is also assigned in permitting plaintiff's counsel to cross-examine certain of the defendant's witnesses with respect to their knowledge and information regarding the mental con-

7. EVIDENCE: opinion evidence: mental unsoundness: cross-examination.

dition of plaintiff's ward during the time in issue. It appears that these witnesses testified on direct examination as to the soundness of mind of A. A. Ayres. It was proper, in cross-examination, to show whether such a witness had heard reports of the mental unsoundness of Ayres, as this would give the jury an opportunity to judge and determine the credibility and weight to be accorded the testimony of such witness.

We will not pursue the inquiry further, as to the assignments of error made. The instructions given by the court find ample support under the decided cases. The judgment entered is—*Affirmed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.