**IN THE COURT OF APPEALS OF IOWA**

No. 17-1666
Filed October 10, 2018

**ROBERT VALLEY and MARLENE VALLEY,**
    Plaintiffs-Appellants,

**vs.**

**DOUGLAS KIEL and JAN KIEL,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Fayette County, John J. Bauercamper, Judge.

Robert and Marlene Valley appeal the district court order denying their petition and entering judgment in favor of Douglas and Jan Kiel. **REVERSED AND REMANDED.**

Jeffrey E. Clements, West Union, for appellant.

Patrick B. Dillon of Dillon Law, P.C., Sumner, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Robert and Marlene Valley appeal the district court order denying their petition and entering judgment in favor of Douglas and Jan Kiel. They claim the district court erred in applying the law to their cause of action.

**I. Background Facts and Proceedings.**

For thirty-two years, Robert Valley owned and operated Midwest Cleaning Systems, a business that sold and serviced pressure washers and cleaning equipment. For the last thirty years, the business sold and serviced Alkota brand equipment after having sold and serviced two other brands during its first two years in operation. When Robert decided to sell the business, Douglas Kiel was one of four people interested in buying it.

On September 23, 2014, the Valleys and the Kiels signed an asset purchase agreement. The Kiels agreed to purchase the assets of Midwest Cleaning Systems "in their current condition, 'as is' with all faults" for $120,000. Exhibit A, a handwritten attachment to the agreement, listed all of the assets sold under the agreement and their values. The purchase agreement called for the Kiels to pay $40,000 at closing with the remaining $80,000 plus interest due on or before December 1, 2015. It also required the Kiels to execute a security agreement that granted the Valleys a security interest in all of the assets sold under the purchase agreement, which the Kiels signed the same day they signed the purchase agreement. The Valleys filed a UCC financing statement with the Iowa Secretary of State.

When the Kiels failed to make the $80,000 plus interest payment by December 1, 2015, Robert contacted Douglas. Douglas thought the payment was

due on December 31, not December 1. The Kiels then sent the Valleys a check dated December 2, 2015 in the amount of $40,800. Since the check was not for the full amount due, Robert again contacted Douglas. Robert gave the Kiels until March 1, 2016 to pay the balance due under the contract. The Kiels only paid an additional $144.66 before the March 1, 2016 deadline. No further payments were made.

On November 23, 2016, the Valleys filed a petition to foreclose on the collateral provided in the security agreement. They sought judgment against the Valleys for $40,000 plus interest, attorney fees, and costs. They also requested an order granting them the right to possession of the collateral for a sale to be held with the net proceeds from the sale to be applied toward the judgment against the Kiels.

The Kiels filed their answer on December 9, 2016, denying the Valleys' claims. They alleged Robert Valley had assured them that the business had "a defined, protected territory in which [Midwest Cleaning Systems] was the exclusive Alkota Dealer," which it did not. They also claimed that the purchase price originally included a building that the Valleys later withdrew from the assets and the purchase price "should have been reduced to reflect the withdrawal of the building." The Kiels further alleged the value of the assets outlined in Exhibit A was "drastically overstated" and that they "had no way to ascertain these deficiencies until they took possession." Finally, they claimed that they had paid the Valleys "the true value of all assets transferred, and no further payment should be due." They asked the court to dismiss the Valleys' petition, assess the costs to

the Valleys, award them attorney fees, and grant "such other and further relief as the Court deems just and equitable."

Following a bench trial, the district court found the Valleys failed to prove "all elements of their claim for breach of contract" and that the Kiels had proved that the Valleys breached the contract. The court denied the petition and assessed court costs to the Valleys. The Valleys appeal.

**II. Scope of Review.**

The parties agree our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. We are bound by the trial court's fact findings if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a).

**III. Discussion.**

The Valleys contend the district court erred in applying the law to their cause of action. Specifically, they argue the court erred in analyzing their claim as one of breach of contract rather than enforcement of a security interest. We may reverse the district court by finding in favor of the Valleys on their security interest claim, even though it was not decided by the district court. *See Hawkeye Foodserv. Distribution, Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 609-10 (Iowa 2012) (citing *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 811-12, 818-19 (Iowa 2000)).

A security agreement is a means by which a lender can secure payment of a debt in the event a debtor defaults. *See* Iowa Code § 554.9601 (2016) (setting out a secured party's rights after default). If default occurs, the secured party may reduce the claim to judgment or foreclose on the collateral. *See id.*

§ 554.9601(1)(a). "A sale pursuant to an execution is a foreclosure of the security interest . . . ." *Id.* § 554.9601(6).

The Valleys filed a petition seeking to enforce their security interest by asking the court to both reduce the claim to judgment against the Kiels and execute an order granting them the right to possession of the collateral for sale, with the net proceeds of the sale applied toward the judgment. In order to enforce their security interest against the Kiels, the Valleys were required to show that: (1) value was given, (2) the Kiels have rights in the collateral, and (3) the Kiels authenticated a security agreement that provides a description of the collateral. *See id.* § 554.9203(2)(a)-(c)(1). They also had to show the Kiels defaulted on the purchase agreement. *See id.* § 554.9601(1).

The record shows that the Valleys gave value to the Kiels by transferring the business and its assets and financing $80,000 of the agreed purchase price. The Kiels have rights in the collateral, which the security agreement described as the assets listed in the purchase agreement. The Kiels also defaulted under the purchase agreement by failing to provide a final payment of $40,000 plus interest. On this basis, the Valleys have met the requirements to enforce their security interest.

The Kiels deny they owe any money to the Valleys under the purchase agreement. The district court analyzed the case as a breach of contract claim.[1] To prove a breach of contract, the Kiels must show (1) the existence of a contract, (2) the terms and conditions of the contract, (3) their performance of all the terms

---

[1] In their opening statements, both counsel introduced the case as one of breach of contract. Closing arguments were not reported.

and conditions required under the contract, (4) the Valleys breached the contract, and (5) the Kiels have suffered damages as a result of the Valleys' breach. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). After reviewing the contract, we are unable to find the Valleys breached any of the terms of the contract as written. *See Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (noting the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract).

In their answer, the Kiels claimed they did not receive the full benefit of what they bargained for because "[a]t best the contract was negotiated through mutual mistake," and "[a]t worst [the Valleys] procured the sale contract through fraud in the inducement." Regardless of which occurred, they asserted in their answer that "judicial revision of the contract is required." They claim the money they paid to date—$40,000 less than the price stated in the purchase agreement—is "the true value" of the benefit received under the contract as written and, therefore, "no further payment should be due." Essentially, the Kiels argued that in light of fraud and/or mistake, the court should reform the purchase agreement to lower the purchase price by $40,000. Although the district court did not consider this claim, we may decide it on appeal. *See Hawkeye Foodserv.*, 812 N.W.2d at 610 (citing *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 662-66 (Iowa 2008)). In denying the Valleys' petition, the court effectively reformed the contract to reduce the purchase price by $40,000.

"Iowa law permits reformation of a written agreement that fails to reflect the 'true agreement' between the parties." *See Peak v. Adams*, 799 N.W.2d 535, 545 (Iowa 2011) (citation omitted). Written instruments may be reformed if "the party

seeking reformation establishes a mutual mistake, or a mistake on the part of one party and fraud or inequitable conduct on the part of the other, and that the policy as written does not express the agreement of the parties." *Schuknecht v. W. Mut. Ins. Co.*, 203 N.W.2d 605, 608 (Iowa 1973). The party seeking reformation must establish these elements by clear, satisfactory, and convincing evidence.[2] *See* Iowa R. App. P. 6.904(3)(k). In reforming a written instrument, the court must only speak the true contract—not make contracts for the parties. *See Wallace v. Spray*, 78 N.W.2d 406, 408 (Iowa 1956). Therefore, in order to reform a contract,

> a definite intention or agreement on which the minds of the parties had met must have preexisted the instrument in question. There can be no reformation unless there is a preliminary or prior agreement, either written or verbal, between the parties, furnishing the basis for rectification or to which the instrument can be conformed.

*Peak*, 799 N.W.2d at 545 (citing *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 636 (Iowa 1996) (quoting 66 Am. Jur. 2d Reformation of Instruments § 4, at 529 (1973))).

The Kiels sought reformation of the purchase agreement, claiming it failed to reflect the true agreement of the parties in three respects. In their answer, they alleged: (1) Robert Valley falsely assured them they would be the exclusive distributor of Alkota equipment in "a defined, protected territory"; (2) the purchase price was based on the inclusion of a building in the sale and was never lowered when the building was later withdrawn from the sale; and (3) the values of the

---

[2] Although the Valleys' action to enforce their security interest is an action at law, the Kiels were permitted to seek the equitable remedy of reformation. *See Markley v. Lockwood*, 176 N.W. 294, 295 (Iowa 1920) (holding petition to intervene in an action at law could seek equitable relief of reformation); *see also Ayers v. Nopoulos*, 216 N.W. 258, 260 (Iowa 1927) ("The action was commenced at law, and it continued to be such even though the defendant interposed an equitable defense by way of answer.").

assets listed in Exhibit A were "drastically overstated," which they could not have discovered before taking possession of the assets.

To grant reformation based on mutual mistake of fact, it "is necessary the mistake be mutual, and both parties understood the contract as the petition alleges it ought to have been, and as in fact it was except for the mistake." *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa Ct. App. 1998). Clearly, the mistake here was not mutual. A unilateral mistake by one party may be the basis for reformation if it is accompanied by fraud or inequitable conduct by the other party. *Id.* A finding of fraud requires "(1) a material misrepresentation; (2) made knowingly; (3) with the intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Id.* at 713-14.

The only evidence concerning any representation that Kiels would receive an exclusive Alkota sales territory is the testimony of Robert Valley and Douglas Kiel. Robert Valley testified that the general sales area Alkota assigned him was not an exclusive territory, that he never claimed it was exclusive, and that he told Douglas Kiel that "[y]ou cannot keep people from coming up" and selling in the sales area. In contrast, Douglas Kiel testified that Robert Valley told him that the purchase included an exclusive sales territory. Douglas Kiel agreed the written contract did not state he was getting an exclusive sales territory. Instead, he claimed that the agreement's non-competition clause indicates an exclusive sales area. But the clause states only that the Valleys would not compete with the Kiels' business in "the Alkota Northeast Iowa distributing area"—not that no other sellers would compete in the area. Douglas Kiel also testified he believed the reference to the "goodwill of the seller" in the portion of the purchase agreement concerning

the assets being sold indicated an exclusive right to sell within the territory. The paragraph in question states the Valleys were selling the Kiels the "assets, business, and goodwill of Seller." Nothing in the purchase agreement states or indicates the Kiels would receive an exclusive sales territory. Furthermore, the contract specifically states it "supersedes all prior agreements and understandings between the parties."

With regard to the inclusion of a building with the sale of the business, Robert Valley testified that he verbally agreed to give Douglas Kiel a building on the property when Kiel expressed an interest in having it. Douglas Kiel testified that the building "was given to [him]" but he decided not to move it. When Douglas Kiel told Robert Valley that he would instead advertise to see if someone wanted to buy the building, Robert Valley told him, "Well, I'll take it back then." When asked, "But you paid nothing for it, . . . correct?" Douglas Kiel replied, "What difference does that make?" The building is not listed as an asset and is not otherwise mentioned in the purchase agreement.

Finally, with regard to the value of the assets listed in Exhibit A to the purchase agreement, Robert Valley testified that the Kiels inspected or viewed the assets before signing the agreement. Douglas Kiel testified he and his wife were at Valley's place of business a "couple of times" and had a chance to "look at his parts bins and those types of things." The Kiels claim that they received parts by other manufacturers, but Robert Valley testified that he gave the Kiels those parts, he did not sell them, and therefore they were not listed in Exhibit A. Robert Kiel testified those parts were in the asset purchase agreement "somewhere," and "I'm sure they are in there as parts."

The Kiels fall short of proving by clear and convincing evidence that the Valleys practiced fraud in inducing them to sign the agreement. Accordingly, there is no basis for reforming the purchase agreement to decrease the purchase price by $40,000. The Kiels defaulted by failing to pay the Valleys $40,000 by December 1, 2015, as specified in the purchase agreement.

The Valleys have met their burden of proving their claim to enforce the security interest. We reverse the district court order denying their petition and assessing them the costs of the action. We enter judgment in favor of the Valleys in the amount of $42,162.73. We assess costs of the action to the Kiels. We remand to the district court to determine the amount of attorney fees to award the Valleys pursuant to Iowa Code section 625.22.

**REVERSED AND REMANDED.**